USCA1 Opinion

 

 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 97-1187 UNITED STATES OF AMERICA, Appellee, v. ERIC GRAY SNYDER, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Victoria L. Nadel for appellant. _________________ James F. Lang, Assistant United States Attorney, with whom _____________ Donald K. Stern, United States Attorney, was on brief, for the ________________ United States. _________________________ January 29, 1998 _________________________ SELYA, Circuit Judge. A jury found defendant-appellant SELYA, Circuit Judge. _____________ Eric Gray Snyder guilty of being a felon in possession of a loaded firearm, in violation of 18 U.S.C. 922(g)(1). Snyder appeals. We affirm his conviction.1 The appellant has cultivated a hothouse of issues. Some are hardier than others. We address seven of them, rejecting the remainder all of which are patently meritless  without editorial comment. We discuss the facts of the case, insofar as necessary, in connection with our discussion of particular issues. 1. The Events of January 8-10. The appellant's 1. The Events of January 8-10. _____________________________ principal Fourth Amendment claim is that the Boston police lacked reasonable suspicion to detain him on January 8, 1995, and likewise lacked probable cause to arrest him on January 10, or to search a locked briefcase in the trunk of his car coincident with the arrest. On this basis, he contends that the district court erred in refusing to suppress evidence obtained during and after the stop, arrest, and search. We review de novo the trial court's determinations of reasonable suspicion and probable cause, but defer to the trial court's subsidiary findings of fact (accepting those findings unless they are clearly erroneous). See United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997). ___ _____________ _____ The governing legal standards are familiar. "[A]  ____________________ 1In a separate cross-appeal, No. 97-1233, the government challenges the district court's leniency in sentencing. The two appeals were consolidated for purposes of oral argument, but we have elected to write a separate opinion for each. 2 police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 _____ ____ (1968). Such an investigatory stop requires only reasonable suspicion, based on "specific and articulable facts," id. at 21, ___ that, viewed through the eyes of a prudent police officer, warrant the intrusion. Like reasonable suspicion, "probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts." Illinois v. ________ Gates, 462 U.S. 213, 232 (1983). This "totality-of-the- _____ circumstances" approach "recognize[s] the value of corroboration of details of an informant's tip by independent police work." Id. at 241. ___ We need not dwell on the events of January 8. It suffices to say that the district court's findings, made after a three-day evidentiary hearing, are plainly supportable. The record, fairly read, conduces to a finding that the police protagonist, Officer Doogan, had reasonable suspicion, based on specific and articulable facts, sufficient to justify a relatively brief detention. While we dwell at greater length on the events of January 10, we are satisfied that a m lange of adequately corroborated information and circumstances generated the probable cause necessary for Doogan to arrest Snyder and search his vehicle on that date. We explain briefly. 3 Snyder was not a stranger to Doogan, who had some prior suspicions about Snyder's involvement in nefarious activities (as witness the detention of January 8). Doogan had learned, by way of a tip from an unnamed informant, that on January 9, Snyder, driving a black Honda, had been in possession of a briefcase containing a handgun.2 On January 10, Doogan received a page from John Hawk, an informant who had occasionally worked for him in the past. Doogan telephoned Hawk, who reported that Snyder had just robbed him at gunpoint, stolen a quantity of Valium tablets, and sped off in a black Honda accompanied by a known criminal (Diaferio). Hawk also said that the men were heading for Roslindale. Doogan knew that Diaferio lived at 17 Murray Hill Road, Roslindale, a known drug haven that had figured in the January 8 detention. Believing that the men were likely to turn up at 17 Murray Hill Road, Doogan arranged a police surveillance at that address. Shortly thereafter, Snyder arrived, driving a black Honda and accompanied by Diaferio. He parked the car on the street. At this point, the police had enough information in support of Hawk's report to establish probable cause that Snyder, a previously convicted felon, had committed a crime and that he possessed not only the avails of the robbery but also a handgun. The officers converged on Snyder and Diaferio, frisked the two men, and found no weapons. They then searched the black  ____________________ 2Another detective passed this tip to Doogan, having garnered it from an informant who worked with the federal Bureau of Alcohol, Tobacco, and Firearms and the Massachusetts State Police. 4 Honda. The vehicle's trunk yielded a briefcase. Doogan shook the briefcase and felt something heavy inside it. When Doogan pried open the corner of the locked briefcase, he saw what appeared to be a gun. Doogan then forced the lock open and confiscated a fully loaded Colt semi-automatic .32 caliber pistol. The police arrested Snyder and took him into custody. A later search of his person at the station house turned up 26 Valium tablets in his pants pocket. The search was lawful. Snyder parked his car on a public highway. A warrantless search is justified even in the case of a stationary vehicle parked on a public road based on its inherent mobility and the reduced expectation of privacy afforded to vehicles. See California v. Carney, 471 U.S. 386, 392-93 ___ __________ ______ (1985). Thus, under a recognized exception to the Fourth Amendment, a police officer may search such a vehicle without a warrant if there is probable cause to believe that a crime has been committed and that contraband or evidence of illegal activities will be found there. See Carroll v. United States, ___ _______ _____________ 267 U.S. 132, 153-54 (1925); United States v. Panitz, 907 F.2d _____________ ______ 1267, 1271 (1st Cir. 1990). By the same token, a diminished expectation of privacy extends to personal property within an automobile. If the police have probable cause to search a car, they also may inspect the interior of any closed container within it that reasonably might be thought to contain a proper object of the search. See California v. Acevedo, 500 U.S. 565, 579-80 ___ __________ _______ (1991); United States v. Ross, 456 U.S. 798, 823 (1982). _____________ ____ 5 These principles are dispositive here. As previously indicated, Officer Doogan had probable cause to believe that a crime had been committed and that a search of the Honda likely would produce evidence of it (i.e., the Valium tablets and the gun). It follows that Doogan had a right not only to search the Honda for the gun, but also to search the briefcase for it. Accordingly, the district court did not err in denying the appellant's motion to suppress. 2. Sufficiency of the Evidence. The appellant 2. Sufficiency of the Evidence. ______________________________ challenges the sufficiency of the government's proof, arguing that the evidence adduced cannot support a finding that he knowingly possessed the firearm. This argument is procedurally defaulted. See United States v. Neal, 36 F.3d 1190, 1206-07 (1st ___ _____________ ____ Cir. 1994) (holding that grounds not urged below in support of a motion for judgment of acquittal are deemed waived on appeal). There is, of course, an exception for convictions that are "clearly and grossly unjust," id. at 1207, but that exception ___ does not apply here. Leaving procedural default to one side, the standard by which sufficiency challenges are reviewed is straightforward: An appellate court plays a very circumscribed role in gauging the sufficiency of the evidentiary foundation upon which a criminal conviction rests. The court of appeals neither weighs the credibility of the witnesses nor attempts to assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence. Instead, its task is to canvass the evidence (direct and circumstantial) in the light most agreeable to the prosecution and decide whether that 6 evidence, including all plausible inferences extractable therefrom, enables a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime. United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997) ______________ ____ (citations omitted). The evidence in this case easily passes muster under the Noah test. After all, the standard demands that ____ a reviewing court resolve all credibility conflicts in a manner compatible with the verdict. See United States v. Santiago, 83 ___ _____________ ________ F.3d 20, 23 (1st Cir. 1996). Here, a rational jury could have chosen to believe Hawk and therefore could have found not only constructive possession, but also actual possession. 3. Exculpatory Evidence. The appellant says that the 3. Exculpatory Evidence. _____________________ government failed to disclose certain exculpatory evidence, in violation of its duty under Brady v. Maryland, 373 U.S. 83, 87 _____ ________ (1963). This contention was never raised in the district court; and, moveover, the record indicates that the evidence in question in fact was made known to the appellant before or during the trial. Consequently, his complaint is for delayed disclosure, rather than non-disclosure, and he has utterly failed to show any prejudice stemming from the delay. The claim of error therefore fails. See United States v. Sepulveda, 15 F.3d 1161, 1178 (1st ___ _____________ _________ Cir. 1993). 4. Jury Instructions. The appellant calumnizes the 4. Jury Instructions. _________________ district court's instruction to the jury on constructive possession. The challenged instruction is virtually identical to that which we criticized in United States v. Booth, 111 F.3d 1, 2 _____________ _____ 7 (1st Cir. 1997). Here, like in Booth, the defendant interjected _____ no contemporaneous objection to the instruction, and our review is for plain error. See id. ___ ___ In Booth, we concluded that the language used, though _____ infelicitous, did not require reversal. We reach the same conclusion here. Taking the charge as a whole, see United States ___ _____________ v. Weston, 960 F.2d 212, 216 (1st Cir. 1992), and weighing the ______ strength of the government's case a case which, in our view, is stronger than that presented in Booth we find that any error in _____ the constructive possession instruction was harmless. 5. The Summation. The appellant accuses the 5. The Summation. _______________ prosecutor of committing three sins in the course of closing argument: improper vouching; commenting upon the defendant's right to remain silent; and commenting upon facts not in evidence. The appellant's trial counsel did not object to any of the remarks and for good reason. While all three practices are to be condemned, none of them occurred here. We add only that a defendant who fails to lodge a contemporaneous objection to the prosecution's summation is in a perilously poor position to complain that a seemingly appropriate comment conceivably could have been taken by jurors in some other (improper) way. See ___ United States v. Lilly, 983 F.2d 300, 307-08 (1st Cir. 1992). _____________ _____ 6. Estrella. During the sentencing phase, the 6. Estrella. ________ district court applied this court's recent decision in United ______ States v. Estrella, 104 F.3d 3, 5-8 (1st Cir. 1997), when ruling ______ ________ that Snyder's prior criminal record rendered him subject to the 8 provisions of the Armed Career Criminal Act. The appellant asks us to reconsider Estrella, but offers no new reasons for doing ________ so. We have held before, and today reaffirm, that prior panel decisions are binding upon newly constituted panels in the absence of supervening authority. See United States v. Objio- ___ _____________ ______ Sarraff, 108 F.3d 421, 421 (1st Cir. 1997) (per curiam); United _______ ______ States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995); United States ______ ________ _____________ v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991). The district _____ court appropriately followed Estrella in this instance, and we ________ are unable to reexamine Estrella's holding at this time.3 ________ 7. Ineffective Assistance. The appellant presses a 7. Ineffective Assistance. ______________________ claim, which he did not advance below, that trial counsel's performance was constitutionally deficient. Such claims ordinarily are fact-based and, with rare exceptions, will not be heard for the first time on direct appeal. See United States v. ___ _____________ Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (listing representative ____ cases). The appellant's challenge is factbound and there is no basis for deviating from the usual rule. Thus, we dismiss this aspect of the appeal without prejudice to the appellant's right to renew the claim on a petition brought pursuant to 28 U.S.C.  2255. We need go no further. From aught that appears, the  ____________________ 3Subsequent to oral argument of this appeal, the Supreme Court granted certiorari in Caron v. United States, 66 U.S.L.W. _____ _____________ 3444 (U.S. Jan. 9, 1998) (No. 97-6270). The Court's answer to the question certified in Caron possibly could require us to _____ reexamine Estrella. We will deal with this possibility in the ________ opinion resolving the government's cross-appeal. 9 appellant was fairly tried and lawfully convicted. The judgment of conviction (but not the sentence) will therefore be Affirmed. Affirmed. ________ 10