**UNITED STATES**

v.

**Jose RAMOS.**

**No. CRIM.99–M–203JLA.**

United States District Court,
D. Massachusetts.

March 9, 1999.

Dena T. Sacco, Assistant United States Attorney, Office of the United States Attorney, Boston, MA, for Plaintiff.

Benjamin D. Entine, Boston, MA, for Defendant.

## ORDER ON DETENTION

ALEXANDER, United States Magistrate Judge.

Defendant Jose Ramos ("Ramos") appeared before this Court on February 25, 1999 for a detention and probable cause hearing following an arrest made pursuant to a complaint charging him with a violation of 18 U.S.C. § 922(g)(1) (possession of a firearm in or affecting interstate or foreign commerce having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year). Attorney Benjamin Entine appeared on behalf of Ramos, and Attorney Dena Sacco appeared on behalf of the government. The government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(D) and (f)(2)(A). The Court took the matter under advisement and invited the parties to brief the issue of the factual predicate necessary for a determination of probable cause to believe a violation of § 922(g)(1) has occurred where possession of the firearm is constructive and/or joint. The government filed its Submission of Cases Regarding Probable Cause on March 1, 1999, and the Court now rules.

*Probable Cause*

■ Under 18 U.S.C. § 922(g)(1), it is the government's burden to establish that (1) the defendant was previously convicted of an offense punishable by imprisonment for a term exceeding one year, and (2) the defendant knowingly possessed a firearm in or affecting interstate commerce. *See U.S. v. Wight*, 968 F.2d 1393, 1397 (1st Cir.1992). Ramos contests the sufficiency of the evidence to establish probable cause to believe that he was in possession of the firearm at issue.

■ It is true, as Defendant argues, that "mere presence on the scene plus association with illegal possessors" is not enough to establish that a defendant had the "power or intention to exercise control" over the firearm. *U.S. v. Rodriguez*, 931 F.Supp. 907, 929 (D.Mass.1996) (quoting *U.S. v. Birmley*, 529 F.2d 103, 107 (6th Cir.1976)). It is also true, however, that "[T]he element of 'knowing possession' under section 922(g)(1) may be established by proving that the defendant was in constructive possession of a firearm." *Wight*, 968 F.2d at 1398. Constructive possession can be found when "a person ... knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.*

In *Rodriguez*, the court held that the evidence before the grand jury was sufficient to allow it to find probable cause to charge the defendant with possession of a firearm. *See Rodriguez*, 931 F.Supp. at 930. That evidence included: (1) eye witness testimony that three individuals fled a car that may have been involved in a drive-by shooting; (2) three individuals ran into an apartment building carrying guns and entered one of the units; (3) when that unit was searched, the defendant was found hiding behind a dresser; (4) a rifle and two sawed off shotguns were found under the dresser; and (5) the defendant was a convicted felon. *See id.* at 930.

Similarly, in *Wight*, the defendant argued that his mere presence in a vehicle that was used to consummate a drug transaction and that contained a firearm was insufficient to establish the second "knowing possession" prong of the § 922(g)(1) offense. The court held that where the evidence established that the defendant was in control of the drug sale operation, it was reasonable for the jury to

infer that the defendant was also in joint control of the gun present in the vehicle that was used for the operation. *See Wight* at 1398. In *Wight,* the factual predicate established that (1) the buyers had been referred to the defendant because of his ability to procure the large amount of marijuana they needed; (2) the defendant participated in the negotiations leading up to the sale and transacted the sale; and (3) the firearm was taken to the residence the defendant shared with his codefendant the day before the sale, given to his codefendant, and transferred to the van at some point prior to the transaction. *See id.* The court noted that it was disingenuous, in light of the facts, for the defendant to argue that he had only been merely present in the van. *See id.*

■ At Ramos's hearing, the government presented ATF Agent Henry J. Moniz, Jr., as its only witness. Agent Moniz testified as to the facts contained in the affidavit he submitted in support of the criminal complaint, and this Court found his testimony to be credible. To sum, Moniz's testimony was as follows. Ramos participated in negotiations with Sgt. Canty, during a meeting at Ramos's home, to sell Canty a firearm on January 20, 1999. (Moniz Affidavit Para. 6,7.) During that meeting, it was Ramos who assured Canty that the serial number would be removed from the gun when it was sold to Canty. (Id.) On January 22, Canty returned to Ramos's home to purchase the gun. Ramos directed an unidentified white male to retrieve the gun, a Walther, PPK/S model .380 caliber semi-automatic pistol, serial number SO35648.[1] Ramos negotiated the sale price with Canty, and accepted payment from him. (Moniz Affidavit Para. 11, 12.) It was Ramos who then walked Canty to the front of the building, made sure the coast was clear, and then gave Canty the go ahead to leave. (Moniz Affidavit at

Para. 13.) These facts provide sufficient evidence to establish probable cause to believe that Ramos, like the defendant in *Wight,* was in control of the gun sale operation and knowingly and intentionally exercised control and dominion over the firearm, and/or over the area in which it was located, either directly or through others. *See* Wight at 1398.

There is no dispute that Ramos is a convicted felon for purposes of § 922(g)(1). Ramos was convicted in Lawrence District Court, Lawrence, Massachusetts, of Possession to Distribute a Class A drug (heroin) on April 9, 1987. This is a crime that requires a term of imprisonment of exceeding one year. (Moniz Affidavit Para. 5.) Additionally, he was convicted of Carrying a Firearm Without A License on December 14, 1989. Based on the foregoing, this Court finds that the facts are sufficient to establish probable cause to believe that Ramos committed a violation of § 922(g)(1).

*Pretrial Detention*

■ The government moved for detention under 18 U.S.C. § 3142(f)(1)(D) and (f)(2)(A). The Court must now determine whether there is a condition or combination of conditions that will adequately assure the Defendant's appearance at future proceedings. Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community ..." 18 U.S.C. § 3142(e). This determination is predicated upon the Government's ability to make a showing of "dangerousness or risk of flight." *United States v. Montalvo–Murillo,* 495 U.S. 711, 716–17, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). Because of the interference of pretrial detention with the "importan[t] and

---

1. Based on the testimony of Moniz at the hearing, the gun was apparently being stored in another apartment in the same building. The serial number was incorrectly reported in Moniz's affidavit, and the correct number, as recorded here, was given to the Court by Moniz during his testimony.

fundamental ... right" of liberty, *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), this Court will not make such a finding lightly.

Pursuant to 18 U.S.C. § 3142(e), a rebuttable presumption arises that no condition or combination of conditions will assure either the safety of the community or a defendant's future appearance if the Court has found probable cause to believe that the defendant committed an offense described in § 3142(f)(1). § 3142(f)(1)(D) provides that a defendant may be detained pending trial in a case that involves "any felony if the person has been convicted of ... two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) (crime of violence [2], crime that may receive sentence of life imprisonment or death penalty, and violation of Controlled Substances Act and Controlled Substances Import and Export Act, where maximum sentence of ten or more years is prescribed, respectively) of this paragraph if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses."

On April 9, 1987, Ramos was convicted of possession of heroin with intent to distribute. On December 14, 1989, Ramos was convicted of carrying a firearm without a license, possession of marijuana, possession of cocaine, and possession of heroin. On December 9, 1996, he was convicted for threatening murder, and for two counts of assault and battery on a police officer. The presumption arises here as these prior crimes satisfy the requirements of § 3142(f)(1)(D). The presumption serves to shift the burden of production and to require that the defendant introduce some evidence to the contrary in order to rebut the presumption. *See United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir.1990); *United States v.*

*DiGiacomo*, 746 F.Supp. 1176, 1181 (D.Mass.1990).

Although defense counsel proffered some suggested conditions for Ramos's release, this Court finds that Ramos failed to provide any evidence to rebut the presumption that no condition could assure the safety of the community. Because this Court finds that the defendant should be detained pursuant to (f)(1)(D), the Court need not reach the question of risk of flight. Accordingly, this Court ORDERS that Defendant JOSE RAMOS be detained pending trial. Further, pursuant to 18 U.S.C. § 3142(i) it is ORDERED that:

1. The Defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The Defendant be afforded reasonable opportunity for private consultation with his counselor; and

3. On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to an authorized deputy United States marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Detention order may be obtained by the Defendant's filing of a motion for revocation or amendment of the Order pursuant to 18 U.S.C. § 3145(b). SO ORDERED.

---

**2.** 18 U.S.C. § 3156 sets forth the definitions used in §§ 3141–3150, and defines a crime of violence as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense ..."